### MARTIN BRIMMER & others *vs.* CITY OF BOSTON.

The board of aldermen of Boston, in laying out public ways, and the officers of the city, in constructing them, act in the exercise of the right of eminent domain delegated to them by the Commonwealth, and not as agents or servants of the city; and their powers in such exercise of that right cannot be destroyed or abridged by any prior covenants cr other acts of the city as a municipal corporation.

The St. of 1867, *c.* 324, authorizing the board of aldermen of Boston to lay out a certain street over tidewaters, construed in connection with the existing laws in respect to laying out highways, makes full provision for compensation for all property taken under it for public use, and is not unconstitutional in authorizing the taking, for such use, of property held under a covenant of quiet enjoyment from the city.

A vote of the board of aldermen of Boston, laying out a public way and assessing dam. ages therefor, cannot be impeached collaterally for not stating separately the damages of each person whose land is taken for the way.

BILL IN EQUITY filed May 17, 1869, by the proprietors of T Wharf in Boston, to restrain the construction, under the St. of 1867, *c.* 324, of a street, called Atlantic Avenue, across the plaintiffs' wharf and dock.

The bill alleged that, on December 30, 1830, the then proprietors of T Wharf (to all of whose rights the plaintiffs had succeeded) entered into a tripartite indenture with the city of Boston (then owning a wharf known as City Wharf) and the Mercantile Wharf Corporation, by which, for a valuable consideration, part of which consisted of the demolition by said proprietors of a wharf now impossible to be replaced, the city and the said corporation covenanted and agreed, to and with the said proprietors, that certain portions of a new dock, established by the indenture, should forever be appropriated to the exclusive use and benefit of the said proprietors, their heirs and assigns, and that said proprietors should forever have an exclusive right of anchorage, wharfage and dockage, on and over the same; and further covenanted and agreed that certain other portions of the dock should be and forever remain a common passageway through the dock to the harbor channel, to be forever kept open, clear and unincumbered, for the use of vessels passing or having occasion to pass to and from the wharves of the parties to the indenture, in which passageway, and in any and every part of

which new dock, said parties should forever have a common right to navigate, for the purpose of passing to and from their wharves, " and that said dock should not be so appropriated or occupied by vessels, or in any other manner, as to leave less space than one hundred feet free and clear between said T Wharf and said City Wharf," but should forever be kept clear and of the width and other dimensions indicated in the inden-ture ; and, to that end, all the said parties to the indenture mutually covenanted and agreed, and bound their respective successors, heirs and assigns, " that they would not in any man-ner obstruct said dock, or any part of it, nor authorize, permit or consent to the obstruction thereof, or of the aforesaid passage-way thereto," save by vessels lying at their respective wharves conformably to the provisions of the indenture ; " and in par-ticular, the said city of Boston did, for itself, its successors and assigns, bind itself, covenant and agree with the other parties to said indenture, their successors, heirs and assigns, that no wharf, building or other structure, should be maintained or erected in any part of said dock by the authority or consent of the said city, its successors or assigns, and that the said city, its suc-cessors or assigns, would not in any manner obstruct, or author-ize or consent to the obstructing, in any manner, of said dock or of any part thereof, or of said common highway or passage-way thereto, save by ships, vessels, rafts or boats lying at their respective wharves, as in the indenture provided."

The bill then alleged that the city of Boston, regardless of its said covenants, had given notice to the plaintiffs of its intention to build, across the new dock and common passageway, and through the portion of the dock expressly appropriated by the indenture to the exclusive use of the proprietors of T Wharf forever, and across T Wharf, a dike, in the nature of a street, and thereby to debar the plaintiffs from access with vessels to that portion of the dock, and to obstruct and destroy the com-mon passageway ; that, notwithstanding the remonstrance and protest of the plaintiffs, it was making preparations to build the dike forthwith ; that it had given notice to the plaintiffs to quit the premises ; and that it was pretending to do these acts under

authority of a vote of its board of aldermen, passed December 14, 1868, which recited " that the safety and convenience of the inhabitants of the city require that Atlantic Avenue should be laid out, one hundred feet in width, from Broad Street at Rowe's Wharf, to Commercial Street at Eastern Avenue, and for that purpose it is necessary to take, and lay out as a public street or way of the said city," certain parcels of real estate, and, among others, a parcel described as belonging to the proprietors of T Wharf, (by the construction across which of said street or dike, the covenants of the indenture would be broken, as above set forth,) and which vote, after further reciting that due notice had been given of the intention of the board to take said parcels of land for the purpose aforesaid, ordered that they " be, and the same hereby are, taken and laid out as a public way, or way of the said city," and adjudged " that the expense of laying out the said Atlantic Avenue as aforesaid, for land and other damages, will amount to the sum of nine hundred thousand dollars," and further ordered " that the treasurer be, and he hereby is authorized to borrow, under the direction of the committee on finance, the sum of twelve hundred thousand dollars, the same to be appropriated for land taken and damages occasioned by the laying out of Atlantic Avenue," and for building the sea-wall, and filling, grading and paving the avenue.

The bill further alleged that the vote of the board of aldermen was void for not stating separately the damages of each person whose land was taken; and finally it prayed for an injunction on the city, its agents, officers, servants, and all persons acting or claiming to act under its authority, from obstructing the dock and common passageway in violation of the indenture, and for general relief.

The defendants filed a general demurrer, and the case was thereupon reserved by *Gray*, J., for the determination of the full court.

*J. P. Healy & C. H. Hill*, for the defendants.

*W. Dehon & J D. Bryant*, (*F. D. Sohier & C. A. Welch* with them,) for the plaintiffs.

MORTON, J.   In laying out ways within the city of Boston, the board of aldermen have similar powers, and perform like duties, as are exercised and performed by the county commissioners in the other counties of the state.   Gen. Sts. *c.* 43, § 77. In the exercise of these powers and performance of these duties, they act, not as officers or agents of the city, but as public officers, vested with *quasi* judicial functions, and deriving their power from the sovereign authority.   The board of aldermen and common council, in laying out and constructing ways, are not subject to the direction or control of the inhabitants of the city, but are an independent board of public officers, vested by law with the control of all matters within their jurisdiction, and performing duties imposed by general laws.   *Harrington* v. *Harrington*, 1 Met. 404.   *Child* v. *Boston*, 4 Allen, 41.   *Griggs* v *Foote*, Ib. 195.

The laying out, establishing and constructing the way is the act of the state, in the exercise of the right of eminent domain. This sovereign power of appropriating private property for public uses cannot be destroyed or abridged by the acts of any individual or corporation.   It is obvious, therefore, that the stipulations and covenants of the city of Boston, contained in the indenture executed in 1830, whatever may be their construction or character, cannot operate to defeat or abridge the power of the public to appropriate the dock of the plaintiffs, or any part of it, to public uses as a highway.   If they are to be construed as claimed by the plaintiffs, they cannot have the effect to defeat the rights of the public, or to excuse the city from its duty to construct the way.

The plaintiffs hold their estate subject to the liability, which attaches to the property of every individual in the community, to be taken and appropriated for a public use; and the fact that they hold it under a covenant of quiet enjoyment, entered into by the city of Boston in its capacity as a municipal corporation, cannot create in their favor an exemption from this common liability.

It is urged by the plaintiffs, that the city should be restrained from entering upon their dock for the purpose of constructing

Atlantic Avenue, because it is laid out over navigable waters. The St. of 1867, *c.* 324, confers upon the board of aldermen the power to lay out this street over tide waters, and we can see no force in the argument that this act is unconstitutional as being in violation of, or authorizing the violation of, the obligations of the contract entered into by the city. The act, construed in connection with the existing laws in respect to laying out highways, makes full provision for compensation for all property or rights taken for public use. It does not impair the obligation of the contract of the city; it recognizes the contract, and the rights of the plaintiffs under it, and provides indemnity for those rights, if appropriated to a public use. *Central Bridge Co.* v. *Lowell,* 4 Gray, 474. *Boston & Lowell Railroad Co.* v. *Salem & Lowell Railroad Co.* 2 Gray, 1. *Springfield* v. *Connecticut River Railroad Co.* 4 Cush. 63.

The plaintiffs also contend that the proceedings of the board of aldermen are illegal, because they did not, in their vote laying out the street and estimating the damages, state separately the share of each person who sustained damage by the laying out. But we are of opinion that this question is not open to the plaintiffs in this suit. The adjudication of the board of aldermen laying out a way cannot be impeached incidentally, for errors in the mode of proceeding not affecting their jurisdiction; but the proper remedy is by a writ of *cèrtiorari,* upon which the whole record will be certified to this court and a proper judgment can be entered, affirming or quashing their proceedings. *Lowell* v. *Hadley,* 8 Met. 180. *Fitchburg Railroad Co.* v. *Boston & Maine Railroad,* 3 Cush. 58. *Nichols* v. *Salem,* 14 Gray, 490. *Durant* v. *Lawrence,* 1 Allen, 125.

Upon none of the grounds suggested by the plaintiffs are they entitled to the injunction as prayed for; and judgment must be entered sustaining the demurrer and *Dismissing the bill.*