HENRY LEMON *vs.* CITY OF NEWTON.

Middlesex.   Nov. 20, 1882. — March 1, 1883.   DEVENS & HOLMES, JJ.,
absent.

A town has no authority by statute, in this Commonwealth, to lay out and con-
struct drains or sewers.

A town is not responsible for damages resulting from work done under the sup-
posed authority of illegal and void votes.

TORT for an alleged nuisance to the plaintiff's estate.   At
the trial in this court, before *Devens*, J., the jury returned a
verdict for the plaintiff; and the defendant alleged exceptions.
The facts appear in the opinion.

*C. Robinson, Jr. & G. A. Blaney*, for the defendant.

*B. F. Butler*, for the plaintiff.

COLBURN, J.   The following facts appeared in evidence in
this case.   A legal town meeting of the inhabitants of Newton
was held on November 13, 1871.   The 16th article in the war-
rant for said meeting was as follows:   "To see if the town
will change, or authorize the change, of the course of the brook
running between Church and Elmwood Streets in the village of
Newton, across land recently purchased by Grace Church Par-
ish and land of others, stone up and cover the same according
to plans of an engineer, or do anything relating thereto."   Under
this article, it was voted, " That the matter of a change in the
brook or drain crossing Church Street near Grace Church lands,
and extending from Mount Ida to Charles River, also of mak-
ing the stream a common drain for the town of Newton, be
referred to the selectmen, with instructions to construct the said
drain."   It was also voted " to appropriate the sum of $2500 to
be expended by the selectmen, if necessary, under article 16."

At a legal town meeting of said inhabitants, held March 4,
1872, the warrant contained the following articles:   " Article 33.
To see if the town will vote to lay out a drain from the foot of
Mount Ida to the Charles River, through the brook or natural
drainage, or otherwise, and appropriate money therefor.   Ar-
ticle 34.   To see if the town will authorize the selectmen to
lower the drain or culvert under the Boston and Albany Rail-
road at Brook Street, Newton Corner, and arrange, if need be,

to have Brook and Washington Streets lowered so as to go under the railroad." Acting under article 33, it was voted " that the town build said drain." Acting under article 34, it was voted " that this article be divided, and that the first part of it, respecting a drain, be referred to the selectmen; " and " to refer the latter part of the article, lowering the streets, to the selectmen to report at a future meeting." At an adjournment of this meeting, held on March 11, 1872, acting under article 33, it was voted " to appropriate ten thousand dollars for said drain."

At a legal meeting of said inhabitants, held May 27, 1872, the 5th article in the warrant was as follows: " To see if the town will make an additional appropriation of money for drainage at Newton Corner; " and, acting under this article, it was voted " to appropriate five thousand dollars for drainage at Newton Corner."

At a legal meeting of said inhabitants, held March 3, 1873, the 28th article was as follows: " To see if the town will construct water-ways for fire purposes on the line of the new drain in Newton Village, and appropriate seven hundred dollars for the same." At an adjournment of this meeting, held March 10, 1873, it was voted " that this article be referred to the selectmen, with full powers, and that a sum not exceeding $700 be appropriated therefor."

The brook in question was a natural watercourse, which ran through the most populous portion of Newton, and over the plaintiff's land into Charles River. Acting in pursuance of the votes above stated, the selectmen of the town, beginning about three hundred feet above the plaintiff's land, and extending the work about twenty-eight hundred feet up the brook, deepened and changed in places the channel of the brook, under the streets and through the lands of individuals, walled up its sides with rough stones not laid in mortar, and covered it over with large flat stones, and put soil thereon, leaving openings through catch-basins to receive the surface water of the streets, with other openings, fitted with iron covers for fire purposes, and to afford means of entering the brook. The bottom of the brook or drain, so constructed, was the natural soil, was flat, with uniform sectional grades, and was from four to two and a half feet in width, and the walls were from five to three feet in height

inside, the work gradually diminishing in width and height from the lower to the upper end.

This work was begun early in 1872, and was completed on May 20, 1873. The town of Newton became a city on January 5, 1874. Before the work was done by the town, private persons had, for a long time, by means of private drains, or otherwise, discharged house filth and sewage from privies and sinks into said brook. How much this had increased or diminished since the work was done, was in controversy. There was no evidence that the defendant had by vote, or by any of its officers or agents, given any license to any person to enter any private drain into said brook or drain; and there was no evidence of any drainage from any land or building owned or occupied by the town. Repairs had been made on the drain, and the expenses paid from the treasury of the defendant.

The plaintiff contended, and introduced evidence tending to show, that, as a consequence of this work, the brook through his land had been rendered filthy; that his premises had been rendered unhealthy by stenches coming from the brook; that the volume of water had been increased; and that large quantities of filthy matter had been deposited on his lands; that though the work was done without any proper proceedings under any statute, yet as it was done pursuant to votes of the town, and by its agents, and paid for by the town, the defendant was liable for such damages as the plaintiff had sustained; and this action of tort was brought to recover therefor.

The defendant, denying that the plaintiff had sustained any damage in consequence of anything done by the town or its agents, contended that the votes passed by the town were not authorized by law, and of no effect to bind the town; and that the defendant was not responsible for any consequences that resulted from the work done by the agents of the town pursuant to said votes.

The first question presented for our determination is the validity of the votes of the town. Acts have been passed from time to time, commencing at an early period, relating to drains and sewers. Prov. St. 1709–10 (8 Anne) c. 5; 1 Prov. Laws (State ed.) 643. Prov. St. 1753–4 (27 Geo. II.) c. 43; 3 Prov. Laws (State ed.) 738. Prov. St. 1762–3 (3 Geo. III.) c. 27;

4 Prov. Laws (State ed.) 620.   St. 1796, *c.* 47.   Rev. Sts. *c.* 27.
But all these acts relate to drains and sewers constructed by
private persons, and give the selectmen of towns certain author-
ity to regulate and adjust the claims of persons interested, and
to protect the public streets from injury by the construction of
such drains and sewers therein.

The St. of 1841, *c.* 115, authorized the selectmen of towns,
and the mayor and aldermen of cities, to make, maintain and
repair all main drains and common sewers in their respective
towns and cities; made all main drains and common sewers
which had theretofore or might thereafter be constructed by any
town or city the property of the town or city; and provided for
an assessment of expenses upon persons benefited.   This act,
as well as its revision in the Gen. Sts. *c.* 48, was only in force
in such cities or towns as might adopt it.

The St. of 1869, *c.* 111, extended the provisions of the Gen.
Sts. *c.* 48, to all cities and towns, authorized the taking of land,
and provided for the assessment of damages, as in cases of laying
out highways and town ways.   This act was in force at the time
the votes were passed and the work done in this case.   No gen-
eral statute has been passed authorizing towns in their corporate
capacity to lay out or construct drains or sewers.   In acting
under the St. of 1869, *c.* 111, selectmen do not act as agents of
the town, but as public officers, deriving their power from the
sovereign authority.   *Child* v. *Boston,* 4 Allen, 41.   *Brimmer* v.
*Boston,* 102 Mass. 19.

The town having no authority by statute to lay out and con-
struct drains or sewers, and such authority not being necessarily
incident to the exercise of its corporate rights and the perform-
ance of its duties, and ample provision having been made for
their laying out and construction by the selectmen, we are of
opinion that the votes of the town, except perhaps that of
March 10, 1873, which is unimportant in this case, were ille-
gal and void.   *Stetson* v. *Kempton,* 13 Mass. 272.   *Parsons* v.
*Goshen,* 11 Pick. 396.   *Vincent* v. *Nantucket,* 12 Cush. 103.
*Hood* v. *Lynn,* 1 Allen, 103.

The next question presented is, whether the defendant is lia-
ble in tort for damages resulting to the plaintiff from the work
done by the selectmen.   We are of opinion that a town cannot

be held responsible for damages resulting from work done under the supposed authority of illegal and void votes. *Anthony* v. *Adams*, 1 Met. 284. *Cushing* v. *Bedford*, 125 Mass. 526.

*Exceptions sustained.*