MARGARET J. GILPATRICK *vs.* CITY OF BIDDEFORD.

York. Opinion August 17, 1894.

*Sewers. Municipal Officers. Towns. Agents. Biddeford City Ordinances.*
*R. S., c. 16, §§ 2, 3.*

It is provided by statute that the "municipal officers of a town may at the expense of a town construct public drains or sewers along or across any public way therein, and through any lands of persons or corporations when they deem it necessary for public convenience or health; and they shall be under their control."

In exercising this authority, the municipal officers act, not as agents of the town, but as representatives of the general government. In this respect they act upon their own responsibility, and are not subject either to the control or the direction of the inhabitants of the town. By simply electing municipal officers for such purposes, and expending money therefor, the town incurs no town liability for damages caused by the misconduct of such officers.

In an action of trespass against the city of Biddeford for acts performed by the street commissioner in the construction of a public sewer at the expense of the city across the plaintiff's field; *Held,* that the ordinances of the city of Biddeford were not designed to usurp the powers vested in the mayor and aldermen by the general statute, and the street commissioner was not thereby made the agent of the city in the construction of this sewer. Nor did the city by any special vote of the city council instruct the commissioner to build this sewer or give any directions in regard to the manner of building it.

The mayor unquestionably had the concurrence and support of the aldermen, however irregularly expressed, and deemed it proper to place the construction of the sewer under the immediate charge of the street commissioner.

The work may properly be said to have been done by order of the mayor and aldermen, acting not as agents of the city, but as public officers in the exercise of a power conferred by general law.

ON REPORT.

This was an action against the city of Biddeford, for breaking and entering the plaintiff's close and building a drain or sewer. It has been before the law court once on demurrer, and the demurrer was overruled, the rescript dated November 7, 1892, being as follows : "The demurrer admits the allegations in the declaration to be true. It charges the defendant with doing, by its workmen, servants and agents acts which for aught that appears therein might have been done in the assertion of some supposed corporate right, and for the doing of which under the immediate direction of the city government, the defendant corporation might properly be held responsible, according to the doctrine laid down in *Cumb. & Oxf. Canal Co.* v. *Portland,* 62 Maine, 504; *Lynde* v. *Rockland,* 66 Maine, 309, 315.

"But while the acts alleged are *prima facie,* acts of trespass, still if upon trial the acts alleged should prove to have been done by public officers of the city, in the line of their duty for the public benefit or use, the city in the absence of any directions to them would not be liable.

"The demurrer having been filed the first term, and overruled,

the defendant may plead anew in accordance with the provisions of R. S., c. 82, § 23."

The case appears in the opinion.

*B. F. Hamilton and B. F. Cleaves*, for plaintiff.

A sewer or drain is the property of the city. *Child* v. *Boston*, 4 Allen, 41. Built partly, at least, for the private gain and emolument of the city. City liable for acts of Shaw in same manner as a private corporation would be. *Darling* v. *Bangor*, 68 Maine, 108 ; *Thayer* v. *Boston*, 19 Pick. 516, and cases.

Where the officers or agents of a municipal corporation, under its authority or direction, take possession of private property without complying with the provisions of its charter or the statute, the corporation is liable in damages therefor. 2 Dill. Mun. Corp. § 791.

The city paid for the sewer, as is admitted, and thus ratified the acts of Mr. Shaw as street commissioner. *Green* v. *Portland*, 32 Maine, 433 ; *Stetson* v. *Faxon*, 19 Pick. 154 ; *Hill* v. *Boston*, 122 Mass. 359 ; *Thayer* v. *Boston*, *supra; Baker* v. *Boston*, 12 Pick. 104 ; *Peck* v. *Ellsworth*, 36 Maine, 393 ; *Woodcock* v. *Calais*, 66 Maine, 234 ; 2 Dill. Mun. Corp. §§ 968, 979, and cases.

Duty of constructing a sewer is merely ministerial. City liable for neglect whereby private property is injured. *Hill* v. *Boston*, *supra;* Damages : R. S., c. 16, § 3 ; *Hildreth* v. *Lowell*, 11 Gray, 345 ; *Oliver* v. *Worcester*, 102 Mass. 500. Street commissioner not acting as public officer, but as agent of city under ordinance. *Hawks* v. *Charlemont*, 107 Mass. 418. City took a fee, and not an easement in the land. *Sheridan* v. *Salem*, 148 Mass. 197, and cases. *Bulger* v. *Eden*, 82 Maine, 352, p. 358.

*Chas. T. Read*, city solicitor, and *N. B. Walker*, for defendant.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

WHITEHOUSE, J. This is an action of trespass against the city of Biddeford for damages resulting from acts alleged to

have been performed by the city in the process of constructing a sewer across the plaintiff's field. The case has been before the court on a demurrer to the declaration which was overruled, and now comes up on report.

It is uncontroverted that, in 1887, the sewer in question, known as Fall street sewer, was built by the street commissioner across the plaintiff's field, for the public use and benefit, and that the city of Biddeford paid for the construction of it. The subject matter appears to have received the attention of both branches of the City Council of Biddeford, and to have been referred to the, "Committee on Streets, Sewers," &c; for we find from the records in the case that the mayor and aldermen and common council, concurred in accepting a report of their committee, recommending among other things, "a sewer to drain the vicinity of Fall street," and also in passing an order authorizing the city treasurer to negotiate a loan of $10,000, "to be expended for the completion of Fall and Pool street sewer and the extension of Alfred street sewer." No other action respecting the construction of this drain appears to have been taken by the city council.

But the plaintiff claims that the ordinances of the city make the street commissioner its agent for the construction of sewers, and render the city liable for his acts performed within the scope of that agency.

Section 2 of c. 9 of the city ordinances provides that, "it shall be the duty of each commissioner of streets to superintend the general state of the streets, . . . . and give notice to the mayor or city marshal of any obstructions therein ; and to superintend the building and repair of any drain, sewer or reservoir in his district and make contracts for labor and materials for the same." Section 5 provides that, "all commissioners of roads and streets shall act and be under the special instruction and supervision of the committee on roads, streets, sewers and drains, subject nevertheless to the approval of the city council."

It does not appear, however, that in the prosecution of this work the street commissioner acted under the, "instruction or supervision of the committee on streets and sewers." On the

contrary, it does appear from the uncontradicted testimony of the street commissioner himself that he, "was acting under orders from the mayor and street commissioners."

Section 2 of chap. 16 of the Revised Statutes provides that, "the municipal officers of a town may at the expense of the town, construct public drains or sewers along or across any public way therein, and through any lands of persons or corporations. when they deem it necessary for public convenience or health; and they shall be under their control." Section 3, provides that, "before the land is so taken, notice shall be given and damages assessed and paid therefor as is provided for the location of town ways."

It is not claimed in this case that there was strict compliance with the statute in regard to notice and the assessment of damages; but it is alleged in the defendant's brief statement that the sewer was laid over the plaintiff's land by virtue of an agreement with and under a license from the plaintiff. Of this, however, the report discloses no evidence; and the defendant's contention now is that the street commissioner was not acting as agent of the city, nor under its direction; and whether he was acting as a public officer under the supervision of the mayor and aldermen, or without any legal authority from any source, he did not in any event render the city liable, whatever personal liability he may have incurred.

The diversified powers and varied duties of municipal corporations in their relation to the citizen and the property owner, as well as the circumstances and conditions under which officials chosen by them are deemed to act as corporate agents of the municipality, on the one hand, or on the other as public officers engaged in the discharge of duties imposed by general law, have been questions involving such frequent and exhaustive discussion in the recent opinions of this court that no general review of the subject is now required. By virtue of the statute above quoted, the authority to lay out and construct public drains and sewers, as well as the subsequent control over them, is clearly vested, not in the city or town as a corporation, but in the

"municipal officers," as representatives of the general government. There is no statute in this State conferring such authority upon the city or town, or upon any officials as agents of the city or town. Nor is such authority necessarily incident to the exercise of its corporate powers or the discharge of its corporate duties. True, the work must be done, "at the expense of the town." A proper system of drainage so directly concerns the public health, that the legislature has deemed it just and right to equalize the burden of constructing sewers by requiring payment to be made from the municipal treasury. But in exercising the authority conferred upon them by statute, the municipal officers act not as agents of the town, but as public officers intrusted with a large discretion and appointed by law to exercise absolute control over the subject matter. *Lemon* v. *Newton*, 134 Mass. 476 ; *Brimmer* v. *Boston*, 102 Mass. 19 ; *Child* v. *Boston*, 4 Allen, 41. In this respect, "they act upon their own responsibility and are not subject either to the control or the direction of the inhabitants of the town." *Bulger* v. *Eden*, 82 Maine, 352. By simply electing municipal officers for such purposes, and appropriating and expending money therefor, the town incurs no liability for damages caused by the misconduct of such officers. It has only performed its functions as a public agency of the state in obedience to general law. *Goddard* v. *Harpswell*, 84 Maine, 499. In this State the doctrine is now clearly established by the decisions of this court, that, "when a public officer in the line of his duty does a public work within a town for the public benefit or use, the town in the absence of any directions to him is not liable for his misconduct in such work even though it appointed him, and is obliged to pay the cost of the work." *Small* v. *Danville*, 51 Maine, 359 ; *Bulger* v. *Eden*, and *Goddard* v. *Harpswell*, *supra; Hennessey* v. *New Bedford*, 153 Mass. 260.

The ordinance of the city of Biddeford making it the duty of the street commissioner to superintend the building and repair of sewers and make contracts therefor, and also placing that officer under the, "supervision of the committee on streets and sewers," obviously was not designed as an attempt to usurp the

powers vested in the mayor and aldermen by the general statute. It was, doubtless, primarily intended to apply to the construction of sewers in the public streets, for the safe condition of which the city was responsible. Its peculiar terms were probably the result of a misapprehension in regard to the law. So far as it would have the effect to take away the authority and discretion of the municipal officers · respecting the building of sewers wholly outside the limits of the street, the ordinance, being unauthorized either by the city charter or by the general law, is manifestly void. Furthermore, as already noticed, it appears that the street commissioner did not act under the, "supervision of the committee of the city council on streets and sewers," but, "under orders from the mayor." He was not thereby made the agent of the city.

Nor did the city by any special vote of its council ever instruct the commissioner to build this sewer or give any direction in regard to the manner of building it. The engineer who made the survey and plan for it was employed by the street commissioner, and so far as appears acted solely under his directions. The concurrent action of the city council in referring the matter to a committee and recommending the construction of this drain, may further indicate a failure to distinguish between the, "municipal officers," and the city council, or a misconception of the duties of the two branches. But it was not a vote to build the sewer, nor an instruction to any agent of the city to build it. It was rather an approval of a general proposition for the completion of several sewers, and it was naturally incident to their joint action in appropriating and raising a large sum of money to be expended on the work, as required by the general law. It was not an assumption of any power or responsibility other than that contemplated by the statute. In any event, the city would not be responsible for damages resulting from work done under the supposed authority of a vote that was illegal and void. *Lemon* v. *Newton*, *supra*.

It may fairly be inferred from the evidence, viewed in the light of the situation and circumstances, that the municipal

officers of Biddeford undertook in good faith to discharge an important duty imposed by law, for the public use and benefit. There may have been some confusion in their minds respecting the precise nature and limitations of their authority, but they clearly intended to proceed in the ordinary way. The mayor unquestionably had the concurrence and support of the aldermen, however irregularly expressed, and deemed it proper to place the construction of the sewer under the immediate charge of the street commissioner. Under these circumstances the work may properly be said to have been done by the order of the, "municipal officers," acting not as agents of the city, but as public officers in the exercise of power conferred by general law.

The city is not liable for any error of judgment, or misconduct on their part, or on the part of the street commissioner.

*Plaintiff nonsuit.*