## UNITED STATES DRAINAGE & IRRIGATION CO. v. CITY OF MEDFORD.

(Circuit Court of Appeals, First Circuit.   July 1, 1921.)

No. 1500.

1. **Judgment ⬤⟿660—Res judicata as to question erroneously decided, when suit brought on different cause of action.**

    The judgment in a suit against a city for breach of contract, in which it was decided, even though erroneously, that the contracts were void as obligations of the city, is res judicata on that question in a suit to hold the city liable as trustee for assessments collected on account of the work covered by the contracts.

2. **Municipal corporations ⬤⟿623(2)—Contract binding on city not essential to abatement by board of health or condition precedent to assessment.**

    Under Rev. Laws Mass. c. 75, §§ 75–84, relative to the abatement of nuisances, consisting of land which is wet, rotten, or spongy, or covered with stagnant water, by the board of health of the city or town, contracts with the party doing the work, binding on the city, are not essential to the action of the board in abating the nuisances, and are not conditions precedent to the assessments of a tax for the expense of doing the work, as ascertained by the decision of the board.

3. **Municipal corporations ⬤⟿623(2)—City held bound to assess cost of abatement and collect tax and liable as trustee for amounts collected.**

    Under Rev. Laws Mass. c. 75, §§ 75–84, relative to the abatement of certain nuisances by the board of health of the city or town, it is the duty of the city through its tax assessors to assess a tax upon property specially benefited, based upon the expense and apportionment as determined by the board, and to collect the taxes and hold and pay them to the party entitled, and it is liable as trustee to a company employed by the board to do the work for assessments collected and still in its hands, or returned to the property owners.

4. **Municipal corporations ⬤⟿623(2)—Portion of cost may be assessed against specially benefited property owned by city and not devoted to public use.**

    Under Rev. Laws Mass. c. 75, §§ 75–84, relative to the abatement of certain nuisances, an assessment of benefits may be made against specially benefited property owned by the city and not devoted to public uses.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. **Municipal corporations ⊕⇒623(2)—Statute held not to prevent assessment of portion of cost of abatement against specially benefited property of city.**

St. Mass. 1915, c. 237, § 18, providing that land taken or purchased by a city for unpaid taxes shall not, after foreclosure of the right of redemption, be assessed for taxes, does not apply to an assessment against property of the city specially benefited by the abatement of a nuisance, under Rev. Laws, c. 75, § 75 et seq., where the tax was assessed before the statute was enacted, and it does not appear how the city acquired its title.

6. **Municipal corporations ⊕⇒368(1)—Provision of city charter as to expenditures without appropriation held inapplicable to abatement of nuisance.**

Medford City Charter, § 30, prohibiting expenditures until the board of aldermen has voted an appropriation, does not apply to the abatement of a nuisance by the board of health of the city, under Rev. Laws, c. 75, § 75 et seq., where the expenditure does not exceed $2,000.

7. **Election of remedies ⊕⇒12—Action against city for breach of contract not binding on city held not to preclude suit to hold city as trustee.**

That one employed by a city board of health to abate a nuisance, under Rev. Laws Mass. c. 75, § 75 et seq., brought suit against the city for breach of the contracts, which were not binding obligations of the city, was not such an election of remedies as prevented it from holding the city liable as trustee of the assessments collected by it to pay for the work, as it merely misconceived its rights.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit by the United States Drainage & Irrigation Company against the City of Medford. From a decree dismissing the bill, plaintiff appeals. Reversed and remanded.

James M. Head, of Boston, Mass., for appellant.

A. Chesley York, City Sol., of Medford, Mass., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

BINGHAM, Circuit Judge. This is a proceeding in equity brought by the United States Drainage & Irrigation Company, a New York corporation, against the city of Medford, a Massachusetts municipal corporation, to charge the latter as trustee of sums of money assessed against and collected by the city from certain individual owners of property, and of liens imposed under assessments upon land owned by the city, but not used for public purposes; said lands having been adjudged to have been benefited by the abatement of nuisances which the board of health of the city had ordered abated under the authority conferred upon it by Revised Laws of Massachusetts, c. 75, §§ 75 to 82. The situation out of which the action arises is as follows:

In the spring of 1913 ten petitions were presented to the board of health of the city, each alleging that the land therein described was wet, rotten, spongy, and covered with stagnant water, was offensive to the residents in its vicinity, injurious to the public health and the health of the petitioners, and constituted a nuisance, and praying that it should be abated as provided in the statute above referred to. June 11, 1913, the requisite orders of notice were issued on each petition for a hearing

June 20, 1913, and were duly served. A view of the premises was taken, and on the day appointed a hearing was had. It was adjudged that the lands described in nine of the petitions were nuisances to the respective petitioners and the public, and that these petitions should be granted; that the expense of abating each nuisance would not exceed $2,000; that the nuisances should be abated by the board, by entering upon each parcel of land described and making such excavations, etc., as might be necessary to abate the nuisances; and that the expense should be apportioned among the persons benefited, naming them, giving percentages and stating the estimated benefits in dollars and cents accruing to each of the estates in the nine areas containing the nuisances.

After the adjudication, the board, on July 19, 1913, entered into nine contracts with the plaintiff, by which it agreed to do the work on the nine areas complained of and as designated on a map of the same, for which it was to receive the sum of $15 per acre (the number of acres in each area being agreed upon), payment to be made upon the completion of the work in a given area, and, if not paid within 60 days thereafter, interest was to be charged at the rate of 6 per cent.

After the completion of the work the board made a return of its proceedings, and the assessors of the city assessed the expense against the owners of the several tracts according to their respective shares therein, as determined by the board. The total amount assessed against the owners in the nine areas was $8,480.27. The state of Massachusetts owned about two acres of land in one of the districts, against which an assessment was made for $33.90. The plaintiff makes no claim to the sum assessed against the land of the state. The city was the owner of land from which it derived no revenue, and which was not used for any municipal purpose, against which an assessment was made for $3,365.66. The city collected and received from the individual owners whose lands were assessed $4,998.55, which, excluding the sum of $33.90 assessed against the land of the state, covered all the sums assessed against the individual owners within $82.26.

Subsequent to the decision of the Supreme Court of Massachusetts of January 5, 1917, reported in 225 Mass. at page 467, 114 N. E. at page 734 (hereinafter considered), and prior to the commencement of this suit the city paid back to certain individual owners $3,098.71, and now has in its hands collected from this source $1,899.84. This suit was brought April 23, 1918. At that time a considerable number of the 98 parcels of land owned by individuals, and against which assessments were made, had been transferred.

No appeal was taken by any of the landowners from the decision of the board declaring the lands nuisances, or in determining the expense and apportioning the same between the owners of the various parcels of land, and no proceeding was brought to quash or test the validity of any of the assessments.

The nine contracts for doing the work were in writing, and were signed by the plaintiff and the board, but were not approved by the mayor of the city. After the plaintiff had completed the work of abating the nuisances, the defendant refused to pay the price fixed by the contracts. April 2, 1914, the plaintiff brought suit in the state court

against the city to recover damages for breach of the contracts, and, on January 4, 1917, the Supreme Court of the state (225 Mass. 467, 114 N. E. 734) held that the contracts as obligations of the city were void, none of them having been approved by the mayor as required by the city charter. St. 1903, c. 345, § 39, as amended by St. 1906, c. 252, § 5. The theory upon which the Massachusetts court seems to have proceeded in reaching this conclusion was that the board of health was a department of the city, and was "acting for the city" and as its agent, in so far as it attempted to bind the city by the contracts. For reasons hereafter stated it is not now open to the plaintiff to question whether this was a correct interpretation of the matter.

The present proceeding was begun April 23, 1918, in the United States District Court for Massachusetts and a decree was entered dismissing the bill. It was there held: (1) That it had been adjudged in the suit in the state court that the contracts as between the city and the plaintiff were void, not having been approved by the mayor; and (2) that contracts obligating the city to pay for the work in each area were conditions precedent to the assessment of the expense upon the owners of the lands therein, and, being void, the assessments were illegal.

[1] As it was actually litigated and determined in the prior action in the state court that the contracts, as obligations of the city, were void—the board in making them having acted as agents of the city and without the approval of the mayor—that question, if erroneously decided, as plaintiff contends (Brimmer v. City of Boston, 102 Mass. 19), is res adjudicata as between the parties to this suit, though it be for a different cause of action (Southern Pacific R. R. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 27, 42 L. Ed. 355). It is there said:

"The general principle * * * is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

See, also, Sutton v. Wentworth, 247 Fed. 493, 501, 160 C. C. A. 3.

But, notwithstanding this is so, the plaintiff's right to maintain this proceeding is not necessarily precluded, for whether contracts obligating the city to pay for the work were prerequisites to the assessment of the expense upon the owners of the property benefited depended upon the requirements of the statute under which the board of health acted in abating the nuisances and determining the benefits—a question not raised or litigated in the prior action. It may be conceded that, where a statutory body is authorized to lay out and execute certain public work and charge the expense to the property owners benefited, it should proceed according to the provisions of law conferring the power attempted to be exercised and, in particular, that it should take all the initial steps which the law prescribes as necessary, and that, if it fails to do what the law intended to be done for the protection of the citizen and the prevention of the imposition of an undue burden upon his property, such omission is not to be regarded as a mere informality

or irregularity, for these requirements of law are mandatory.  Bowditch v. Boston, 168 Mass. 239, 243, 46 N. E. 1026.  Many statutes authorizing such work lay down various requirements, such as the making of a contract for doing the work or requiring that the contract be given to the lowest bidder and other similar provisions.  And many cases have been called to our attention construing statutes containing provisions requiring the work to be let by contract, in which it was held that a valid contract to do the work was a condition precedent to a legal assessment.  Warren v. Street Commissioners, 181 Mass. 6, 62 N. E. 951; Maloy v. Hall, 190 Mass. 277, 76 N. E. 452; Poth v. New York, 151 N. Y. 16, 45 N. E. 372; Allen v. City of Davenport, 132 Fed. 209, 65 C. C. A. 641.  But where, under a statute, it is left to the discretion of the body authorized to exercise the authority to say how the work shall be done, it would seem that the landowner could not complain that his rights had not been properly protected if the work was not done under a contract, or assert that a contract for doing the work was a condition precedent to the assessment of the benefits conferred.  In 1 Page & Jones, Taxation by Assessment, § 482, it is said:

"In the absence of a statute requiring the letting of contracts for the construction of public improvements, a city may construct a part of a street itself, and let contracts for the construction of the rest of the street."

It therefore becomes necessary, in the consideration of questions of this character, to ascertain what requirements the particular statute, under which the work is done, contains for the landowner's protection.

[2] Chapter 75 of the Revised Laws of Massachusetts, under which the board of health of the city acted, provides in section 75 that land in the condition of that set out in the above petitions shall be deemed a nuisance, which the board of health of the city where it lies, upon petition and a hearing, may abate, if the expense of abatement will not exceed $2,000, without a previous appropriation therefor.  Section 76 provides that whoever is injured by the nuisance may, by petition describing the premises and nature of the nuisance, apply to the board for its abatement, when the board are to view the premises and examine into the nature and cause of the nuisance.  By section 77 the board, having examined the premises and being of the opinion that the petition should be granted, are directed to appoint a time and place for hearing and give notice thereof to certain parties therein named.  By section 78 the notice is required to be in writing and the method of serving it is prescribed.  In section 79 it is provided:

"Sec. 79. At the time and place appointed therefor, the board shall hear the parties, and thereafter may, in its discretion, cause such nuisance to be abated by entering upon any land and by making such excavations, embankments, and drains therein and under and across any streets and ways, as may be necessary; and shall also determine in what manner and at whose expense the improvements shall be kept in repair, shall estimate and award the damage sustained by, and the benefit accruing to, any person by reason of such improvements, and what proportion of the expense of making and keeping the same in repair shall be borne by the city or town and by the person benefited thereby.  The board shall forthwith give notice of its decision, in the manner required in the preceding section, to the parties to whom notice is required to be given by section seventy-seven and to the assessors of said

city or town. The expense of making and keeping such improvements in repair shall be assessed by the assessors upon the persons benefited thereby, as ascertained by said decision, shall be included in their taxes, shall be a lien upon the land benefited thereby and shall be collected in the same manner as other taxes upon land."

Section 80 allows an appeal by any party aggrieved by the decision of the board that the land is a nuisance to the superior court within a limited time. Section 81 gives a party aggrieved by the decision of the board in the award of damages or in the determination of the benefits accrued or in the apportionment of the expense a right to apply for a jury trial within a limited time. By section 82 the board is required, within thirty days after abating the nuisance, to make return of its doings to the city clerk for record. By sections 83 and 84 authority is given to the superior court or the county commissioners, when the board refuses or neglects to proceed on the petition or neglects or refuses to pass proper orders abating the nuisance.

It is apparent from the language of section 79 that contracts between the plaintiff and the board binding upon the city were not essential to the action of the board in entering upon the land and doing the work of abating the nuisances, but that it was left entirely discretionary with it as to how it would proceed in doing the work and that contracts therefor were not required. The tax was to be assessed upon the expense of doing the work as determined by the board, and the assessors were to ascertain the expense from the return of the board. In the final clause of section 79 it is provided that "the expense of making * * * such improvements * * * shall be assessed by the assessors upon the persons benefited thereby, as ascertained by said decision"—the decision of the board determining the expense and apportioning it among the owners benefited.

As we are of the opinion that contracts between the plaintiff and the board, binding upon the city, were not called for by the statute, they could not be regarded as conditions precedent to the assessments of the tax, and, as no other objection has been raised by the city to the validity of the proceedings by the board leading up to the assessments, we proceed to consider the question whether the city may properly be charged as trustee of the sums collected from the various individual landowners, and as trustee of the liens imposed to secure the benefits apportioned and assessed against the lands held by the city, but not devoted to municipal uses.

[3-6] It is apparent that, by the letter of the statute, the duty is imposed upon the city, through its tax assessors, to assess a tax against the owners of property specially benefited, based upon the expense and apportionment thereof as determined by the board; that it imposes a lien on individual and city property to satisfy the tax, provided the latter class of property is subject to a tax to pay the benefits conferred upon it; and that it makes it the duty of the city to collect the taxes through voluntary payments or by methods provided by law, and to hold and pay the same to the party entitled thereto. New Orleans v. Warner, 175 U. S. 120, 20 Sup. Ct. 44, 44 L. Ed. 96; 138 O. 147. In that case, under the provisions of the statute there in question, it was

held that the city, as trustee, was liable even for the assessment of benefits to its streets, parks and other public places. While we recognize that in Massachusetts (Worcester County v. Worcester, 116 Mass. 193) a different rule prevails as to the assessment of benefits to property of a municipality devoted to public uses, we see no reason why assessments against a city for special benefits to property owned by it and not devoted to public uses should not be valid and the city required to pay them. In fact section 79 provides that the expense of making the improvements, even though the city owns no lands that are especially benefited, may be apportioned to the city, and this being so and the city being liable to contribute to such expense, there would seem to be no reason why it should not also be required to pay for benefits conferred upon particular property owned by it and not devoted to public uses. St. Mass. 1915, c. 237, § 18, providing that land taken or purchased by a city or town for unpaid taxes shall not, after foreclosure of the right of redemption, be assessed for taxes, is without application in this case as it does not appear how the city acquired its title to the lands in question and the statute was enacted after the tax was assessed, if not for other reasons. Boston Seamen's Friend Society v. Boston, 116 Mass. 181, 17 Am. Rep. 153; 28 Cyc. 1131. The provision in section 30 of the charter of the city of Medford, which declares that "no expenditure shall be made and no liability incurred by or in behalf of the city until the board of aldermen has duly voted an appropriation sufficient to meet such expenditure or liability," is also without application in a proceeding under chapter 75, where the expenditure does not exceed $2,000.

The defendant makes the further contention that inasmuch as it has paid back to certain individual owners sums which it had collected from them, it should be excused from accounting for such sums as trustee. It bases this contention largely upon the ground that the assessments from which these sums were derived were illegal, as the contracts for doing the work were not approved by the mayor. But as we have held that a contract for doing the work was not a prerequisite to an assessment of the tax, this contention is without foundation.

[7] The plaintiff did not preclude itself from maintaining the present action, under the doctrine of election of remedies, by bringing the action against the city on the supposed contracts. In bringing that action it misconceived its rights. It thought that it had contract rights with the city, when it had none. Having misconceived its rights, it is not now precluded from adopting a suitable remedy to enforce its real rights. It is not a case where the aggrieved party has two remedies, by which he may enforce inconsistent rights growing out of the same transaction, and, being cognizant of his legal rights and such facts as will enable him to make an intelligent choice, brings his action by one of the methods. Noyes v. Edgerly, 71 N. H. 500, 504, 53 Atl. 311, and cases there cited.

The defendant should be required to account for the sum collected and now in its hands, for the sum collected and thereafter paid back in violation of its trust, and for the sum it should have realized on

the balance of the assessments, and pay to the plaintiff therefrom the sum due it, with interest at 6 per cent. from the time it reasonably should have collected said sums and paid the plaintiff.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes