HON. GEORGE D. BRADEN Corporation Counsel, Schenectady
This is in response to your letter received on February 20, 1976, asking for an opinion of the Attorney General whether or not the Council of the City of Schenectady is authorized to amend an ordinance of the City of Schenectady establishing rules of order and procedure for the Council of the City of Schenectady, which provides, inter alia, that the Mayor is authorized to appoint six standing committees of the Council and designate the chairman of each of said committees by changing said ordinance to provide:
 "(c) Members are assigned to committees by the mayor except when the mayor is not of the political party to which a majority of the members belong, in which case the member designated majority leader assigns members to committees."
New York State Constitution, Article IX, § 2(c), provides, in part:
 "(c) In addition to powers granted in the statute of local governments or any other law, * * * (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
 "(1) The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees, * * *."
Municipal Home Rule Law, § 10(1) (ii) (a) (1), implements the constitutional provision with similar language.
Municipal Home Rule Law, § 23(2) (f), further provides:
 "2. Except as otherwise provided by or under authority of a state statute, a local law shall be subject to mandatory referendum if it:
* * *
 "f. Abolishes, transfers or curtails any power of an elective officer." (Emphasis supplied.)
Laws of 1914, chapter 444, enacted the Optional City Government Law, affording certain cities, such as the City of Schenectady, by following certain procedures to avail themselves of one of the plans contained in said law for governing such city. (Laws of 1939, chapter 765, repealed Laws of 1914, chapter 444 [Optional City Government Law] but froze its provisions to those cities which opted to be governed by one of its plans.) (See, Seaman
v. Fedourich, 16 N.Y.2d 94 [1965].) As you stated, in 1935 the City opted for Plan "C" under said Optional City Government Law. No provision of that law relates to appointment of standing committees of the City Council. However, Second Class Cities Law, § 34, which is pertinent to the City of Schenectady, provides, in part:
 "The common council shall determine the rules of its own proceedings and be the judge of the election, returns and qualifications of its members. Its meetings shall be public and its records open to public inspection, and a majority of all its members shall constitute a quorum to do business. * * *"
This section is likewise silent regarding the appointment of standing committees of the common council. However, when Plan "C" of the Optional City Government Law was implemented on January 1, 1936, an Ordinance No. 8230 adopted on April 27, 1936, established rules of order and procedure for the City Council and included a section 15, providing for six standing committees of three council members each to be appointed by the Mayor who was also empowered to designate the chairman of each of said committees. Thereafter, on July 3, 1956, a new Ordinance No. 12858 was adopted superseding Ordinance No. 8230 which empowered the Mayor to appoint the standing committees and designate the chairmen thereof but the Mayor was not authorized to serve on any of said committees except in an ex officio capacity. It will be noted that Ordinance No. 8230 made no mention that the Mayor was authorized to appoint himself to any standing committees as a member or chairman thereof or serve on such committees in an ex officio capacity. It appears that Ordinance No. 12858, which superseded Ordinance No. 8230 actually increased the powers of the Mayor by authorizing him to serve on any of the standing committees in an ex officio capacity.
We call to your attention that in 1956 when Ordinance No. 12858 was adopted, Municipal Home Rule Law was not yet enacted. However, City Home Rule Law, which existed at that time provided in section 11(2), in part, as follows:
 "2. The local legislative body of a city shall also have power to adopt and amend local laws in relation to the powers and duties of its officers and employees (not including officers who perform no functions for the city except as members of the governing elective body of a county in which such city is wholly contained) * * *."
City Home Rule Law, § 15, also provided, in part:
 "Except as otherwise provided by or under authority of an act of the legislature, a local law shall be subject to mandatory referendum if it:
* * *
 "5. Abolishes, transfers or curtails any power of an elective city officer." (Emphasis supplied.)
The City Home Rule Law was repealed in its entirety and super-seded by the Municipal Home Rule Law, § 58, effective January 1, 1964, upon approval by the people on November 5, 1963 of the constitutional amendment referred to in section 59 of the latter statute.
In Seaman v. Fedourich, 16 N.Y.2d 94 (1965), it was stated:
 "It is axiomatic that local governmental units are creatures of, and exercise only those powers delegated to them by, the State * * *."
In Wells v. Town of Salina, 119 N.Y. 280 (1890), a landmark case relating to the question of powers of municipalities, Judge Earl noted:
 "In Hanger v. City of Des Moines (52 Iowa 193), it was said: `It is well settled that a municipal corporation can exercise only such powers as are expressly granted by statute, and such as are necessarily and fairly implied in, or incident to, those conferred by express grant, and "Those essential to the declared object and purpose of the corporation."' And to the same effect are the following authorities: Minot v. Inhabitants of West Roxbury (supra); Anthony v. Adams (1 Met. 284); Parsons v. Inhabitants of Goshen (11 Pick. 396); Lemnon v. City of Newton (134 Mass. 476); Cornell v. Town of Guilford (1 Denio, 510); Board of Supervisors v. Ellis, (59 N.Y. 620)."
From all of the foregoing, it is apparent that the only authority for the abolition, transfer or curtailment of any power of an elective officer is found in Municipal Home Rule Law, § 23(2) (f), which provides that such abolition, transfer or curtailment must be effectuated by the enactment of a local law subject to mandatory referendum. It matters not that the power given to the Mayor of the City of Schenectady to appoint members of the six standing committees of the Council was given to the Mayor by ordinance rather than a local law. Municipal Home Rule Law, §10(2), provides:
 "2. Every local government also shall have power to adopt and amend local laws where and to the extent that its legislative body has power to act by ordinance, resolution, rule or regulation."
The power to appoint the members of the six standing committees of the Council of the City of Schenectady is a substantialpower and not merely a procedural aspect of common council functions. It should be noted that the language contained in Municipal Home Rule Law, § 23(2) (f), proscribes the enactment of a local law without the approval of such local law by the electors at a mandatory referendum when such local law abolishes, transfers or curtails "any power of an elective officer" and makes no specification as to the method by which such power to be abolished, transferred or curtailed was originally acquired. In any event, we find no provision of law whereby the powers of an elective officer, which are continuing in nature, may be abolished, transferred or curtailed by ordinance. You reference to the provision of the rules-and-procedure ordinance that no rule may be "`altered, suspended or rescinded unless by a majority vote of all the members elected * * *'" does not alter the necessity for a referendum here since the proposal curtails a power of an elective officer. (Emphasis supplied.)
From all of the foregoing, we conclude that the power heretofore granted by ordinance to the Mayor of the City of Schenectady to appoint the standing committees of the Council of the City of Schenectady may not be abolished, transferred or curtailed by ordinance since such abolition, transfer or curtailment of such power may only be accomplished by the enactment of a local law approved by the qualified electors at a referendum.